UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 25 WELFARE FUND, PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 25 PENSION FUND, PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 25 JOINT APPRENTICESHIP FUND, PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 25 401(k) PLAN, EASTERN IA/WESTERN IL INDUSTRY ADVANCEMENT FUND, LABOR MANAGEMENT COOPERATIVE COMMITTEE TRUST FUND, and PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 25, <br><br> Plaintiffs, <br><br> v. <br><br> HIRST PLUMBING & MECHANICAL SERVICES, INC., <br><br> Defendant. | Case No. 4:24-cv-04220-SLD |

## ORDER

Plaintiffs Plumbers and Pipefitters Local Union No. 25 Welfare Fund, Plumbers and Pipefitters Local Union No. 25 Pension Fund, Plumbers and Pipefitters Local Union No. 25 Joint Apprenticeship Fund, Plumbers and Pipefitters Local Union No. 25 401(k) Plan, Eastern IA/Western IL Industry Advancement Fund, Labor Management Cooperative Committee Trust Fund (collectively "the Funds"), and Plumbers and Pipefitters Local Union No. 25 ("the Union") allege in Count I that Defendant Hirst Plumbing & Mechanical Services, Inc. ("Hirst") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 by failing to timely make certain contributions to the Funds and allege in Count II that Hirst violated

1

the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 141–197, via that same conduct. *See generally* Compl., ECF No. 1. Pending before the Court is Plaintiffs' Motion for Entry of Default Judgment, ECF No. 11. For the reasons that follow, the motion is GRANTED IN PART.

## BACKGROUND[1]

Hirst entered into a series of collective bargaining agreements ("CBA") with the Union, signed excerpts of which are provided by Plaintiffs. *See generally* Owner Participation Agreement, Dzekunskas Aff. Ex. 1, Mem. L. Supp. Default J., ECF No. 12-2; 2018–2023 Working Agreement, Dzekunskas Aff. Ex. 2, Mem. L. Supp. Default J., ECF No. 12-3; 2023–2028 Working Agreement, Dzekunskas Aff. Ex. 3., Mem. L. Supp. Default J., ECF No. 12-4. The Funds "are various welfare, pension and related joint, labor-management funds." Compl. ¶ 2. Pursuant to the CBA, Hirst is obligated to report and make fringe benefit contributions to the Funds by the 15th day of the month following the month in which employees performed work covered by the CBA. Hirst must also make its payroll books available for audit. If it fails to timely make those contributions, it must compensate Plaintiffs by paying "liquidated damages in the amount of ten (10%) percent of any and all contributions which are not timely received by Plaintiffs for a particular month . . . together with interest as provided in ERISA," as well as reimburse Plaintiffs' auditing costs and reasonable attorneys' fees. *Id.* ¶ 4.

Plaintiffs filed suit on November 22, 2024, alleging that Hirst was delinquent in its obligations because it had failed to make timely contributions. Plaintiffs sought to recover "all unpaid contributions, liquidated damages, lost earnings[,] any costs of auditing [Hirst]'s records,

---

[1] Because "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true," *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (alteration in original) (quotation marks omitted), the following facts are drawn from the Complaint unless otherwise noted.

accrued interest, and Plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action." *Id.* ¶ 8(A).  Hirst was served on December 3, 2024, *see* Aff. Service, ECF No. 7, but failed to plead or otherwise respond, leading to the Clerk's entry of default against Hirst, *see* Feb. 25, 2025 Text Order; Feb. 27, 2025 Entry Default.  Plaintiffs now request the entry of a default judgment totaling $22,723.27—$20,180.18 in liquidated damages, $216.39 in lost earnings, $1,872.00 in attorneys' fees, and $454.70 in costs.  Mot. Default J. ¶¶ 4–7.

## DISCUSSION

### I. Legal Standard

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *see also* Fed. R. Civ. P. 55(b).  The entry of default judgment is not automatic as the movant must demonstrate that it is entitled to judgment as a matter of law.  *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995).  Further, a default does not establish the veracity of allegations relating to damages.  *Dundee Cement*, 722 F.2d at 1323.  A hearing on damages should be held unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."  *Id.*

### II. Analysis

#### A. Liability

The Funds are "multiemployer plans" and "employee welfare benefit plans," as those terms are defined by ERISA.  *See* 29 U.S.C. § 1002(1), (37)(A); Mem. Supp. Mot. Default J. 1, ECF No. 12 (citing Compl. ¶ 2).  ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of . . .

3

[the] agreement." 29 U.S.C. § 1145. ERISA provides the Funds with a cause of action to enforce Hirst's obligations under the CBA, *id.* § 1132(a), and the Union's cause of action arising under the LMRA to vindicate those same interests has "essentially identical" elements, *Trs. of Loc. Union 531 IBEW & NECA Money Purchase Pension Plan v. Nucore Elec. Inc.*, No. 3:22-CV-444 JD, 2023 WL 569402, at *3 (N.D. Ind. Jan. 27, 2023); *NECA-IBEW Pension Tr. Fund v. Bays Elec., Inc.*, 894 F. Supp. 2d 1071, 1083 (C.D. Ill. 2012) (citing 29 U.S.C. § 185(a)); *see also* Compl. ¶ 10 (asserting that the "rights asserted" under Count II "arise from the same series of transactions as Count I and there are common questions of law and facts to both Counts").

Plaintiffs assert that, after their Complaint was filed, Hirst "submitted all required monthly fringe benefit contribution reports to the Plaintiffs." Mot. Default J. ¶ 3. These reports confirm that Hirst made untimely contributions, such that Plaintiffs suffered lost earnings and Hirst is subject to the assessment of liquidated damages on the untimely contributions. *Id.* ¶¶ 4–5. To substantiate these lost earnings and liquidated damages, Plaintiffs invoke the January 9, 2025 Revised Notice which was provided to Hirst and details the untimely contributions. *See* Jan. 9, 2025 Rev. Not., Dzekunskas Aff. Ex. 5, Mem. L. Supp. Default J., ECF No. 12-6. The Court finds that Plaintiffs have adequately demonstrated their entitlement to a judgment as a matter of law on both Counts I and II because Hirst was a party to the CBA and breached certain obligations which it owed under the CBA, namely, to make timely contributions to the Funds. *See Nucore Elec. Inc.*, 2023 WL 569402, at *4.

### B. Damages

The Court finds that it is unnecessary to hold a hearing on damages because Plaintiffs' requested amounts are specific, supported by documentary evidence, and are "capable of ascertainment" from such evidence. *See Dundee Cement*, 722 F.2d at 1323. The Court turns to

whether each element of requested relief is adequately supported by the Complaint's allegations and Plaintiffs' documentary evidence.

### 1. Liquidated Damages

A successful ERISA plaintiff is entitled to "liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2)(C)(ii). The CBA provide that "a penalty of five percent (5%) of the amount owed shall be added to the amount owed for the first offense, and ten percent (10%) shall be added for each subsequent offense." *E.g.*, 2018–2023 Working Agreement art. XXVI, § 5. Plaintiffs request $20,180.18 in liquidated damages. Mot. Default J. ¶ 5; *see also* Compl. ¶ 8(A) (seeking liquidated damages). To support this request, Plaintiffs submit an affidavit from Tiffany Dzekunskas, the Administrator for the Funds. Dzekunskas Aff. ¶ 1. Dzekunskas is "charged with keeping and maintaining records of contributions and wage deductions received by the Plaintiffs from participating employers" and has "under [her] supervision and direction and maintain in the ordinary course of business all books, records, documents and papers relating to" the Funds. *Id.* ¶ 2. She avers that Hirst "owes 10% liquidated damages/penalties on contributions paid late for the months of September 2021 through December 2021, March 2022, September 2022 through November 2022, September 2023 and November 2023 and June 2024 through September 2024," which total "$20,180.18." *Id.* ¶ 6(f) (citing Jan. 9, 2025 Rev. Not.).

The January 9, 2025 Revised Notice records when certain untimely contributions were due and made, along with the assessed penalties in the form of liquidated damages. Hirst repeatedly failed to make its contributions on time and thereby incurred 10% penalties in many months during 2021–2024. *See* Jan. 9, 2025 Rev. Not. Specifically, Hirst was assessed a 10% penalty for untimely contributions related to work performed in September 2023, October 2023,

5

November 2023, December 2023, June 2024, and July 2024. Other months of untimely contributions were assessed lower percentages—the reasons for the lower assessments are left unexplained by either Dzekunskas or Plaintiffs.[2] Ultimately, the discrepancies between the January 9, 2025 Revised Notice and Dzekunskas Affidavit are immaterial because they all err downwards—in other words, Plaintiffs are not asking for liquidated damages in excess of what they would otherwise be owed under the CBA. Considering the documentary evidence, including sworn statements from the Funds' administrator detailing Hirst's untimely contributions, the Court finds that Plaintiffs are entitled to liquidated damages under the CBA and therefore an award of $20,180.18 in liquidated damages. *See* 29 U.S.C. § 1132(g)(2)(C)(ii).

### 2. Lost Earnings

Plaintiffs request $216.39 in lost earnings. Mot. Default J. ¶ 4; *see also* Compl. ¶ 8(A) (seeking lost earnings). ERISA instructs for multiemployer plans that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, Dzekunskas does not reference any aspect of the CBA for her calculations of lost earnings—she used the Employee Benefits Security Administration's online Voluntary Fiduciary Correction Program calculator ("VFCP Calculator"). Dzeukunskas Aff. ¶ 5; *see also VFCP Calculator - Lost Earnings*, U.S. Emp. Benefits Sec. Admin., https://www.askebsa.dol.gov/vfcpcalculator/webcalculator.aspx (last visited Apr. 25, 2025). The VFCP Calculator "uses . . . Section 6621(a)(2) and (c)(1) underpayment rates in effect during the time period" inputted into it to "compute[] Lost Earnings

---

[2] For example, untimely contributions for work performed in September 2021, the first month detailed in the January 9, 2025 Revised Notice, were assessed a penalty of only 3.62%, lower than the 5% which could be assessed for an employer's first violation. *See* Jan. 9, 2025 Rev. Not.; 2018–2023 Working Agreement art. XXVI, § 5. Untimely contributions for work performed in October 2021, November 2021, December 2021, March 2022, September 2022, October 2022, and November 2022 were assessed penalties ranging from 7.63% to 7.82%. *See* Jan. 9, 2025 Rev. Not. Lastly, untimely contributions for work performed in September 2024 were assessed a penalty of 0.85%. *Id.*

6

and interest, if any." *Voluntary Fiduciary Correction Program (VFCP) Online Calculator with Instructions, Examples and Manual Calculations*, U.S. Emp. Benefits Sec. Admin., https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp (last visited Apr. 23, 2025). In other words, the VFCP Calculator allows a user to follow ERISA's mandate, set forth in 29 U.S.C. § 1132(g)(2), to calculate the loss suffered due to untimely contributions using the rates specified by 26 U.S.C. § 6621.[3] Dzekunskas used the VFCP Calculator to arrive at the sum of $216.39 in "lost earnings charges." Dzeukunskas Aff. ¶ 6(e) (citing Jan. 9, 2025 Rev. Not.).

Courts have accepted using the VFCP Calculator for determining lost earnings in the ERISA context. *See Chaaban v. Criscito*, 468 F. App'x 156, 164 (3d Cir. 2012); *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. J.& A. Contractors Corp.*, 20 CV 1189 (ARR)(LB), 2021 WL 7159908, at *11 (E.D.N.Y. Oct. 28, 2021) (using the VFCP calculator to calculate lost earnings and noting that its "method of calculating lost earnings is . . . defined by federal regulation" (citing Voluntary Fiduciary Correction Program, 65 Fed. Reg. 14164-01 (Mar. 15, 2000))), *report and recommendation adopted*, No. 20-CV-1189 (ARR), 2022 WL 42524 (E.D.N.Y. Jan. 5, 2022). The Court is able to use the VFCP Calculator to recreate Dzekunskas's figures. Given this case's default-judgment posture, the Court finds that the lost earnings figures are "capable of ascertainment" from the January 9, 2025 Revised Notice and VFCP Calculator. *See Dundee Cement*, 722 F.2d at 1323. The Court awards Plaintiffs $216.39 in lost earnings.

---

[3] That section provides that "[t]he underpayment rate . . . shall be the sum of--(A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points." 26 U.S.C. § 6621(a)(1)–(2).

### 3. Attorneys' Fees and Costs

As the final elements of relief, Plaintiffs seek $1,872.00 in attorneys' fees and $454.70 in court costs. Mot. Default J. ¶ 6; *see also* Compl. ¶ 8(A) (requesting "reasonable attorneys' fees and court costs"). Successful enforcement of § 1145 entitles the plaintiff to "reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). To calculate attorneys' fees, courts use the lodestar method—reasonable hourly rate multiplied by the number of hours reasonably expended. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (applying the lodestar method to an ERISA case). A district court "must exclude hours that were not reasonably expended," but need not "achieve auditing perfection." *Vega v. Chi. Park Dist.*, 12 F.4th 696, 704–05 (7th Cir. 2021) (quotation marks omitted). As to the reasonableness of the rates requested:

> A reasonable hourly rate is based on the local market rate for the attorney's services. The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases. The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate.

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (citations omitted). "While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000).

To support their requested attorneys' fees, Plaintiffs provide an affidavit from one of their attorneys, Catherine M. Chapman, and an Itemized Hours Log detailing the work which their attorneys performed in this case. Chapman Aff. ¶ 1, Mem. Supp. Mot. Default J. Ex. B, ECF

8

No. 12-7; Itemized Hours Log, Mem. Supp. Mot. Default J., ECF No. 12-8. The Court finds that all these hours were reasonably expended on Plaintiffs' case and that no hours must be excluded. *See Vega*, 12 F.4th at 704–05. But as to the rates' reasonableness, Plaintiffs' showing is lacking. The Itemized Hours Log does not identify which attorney or staff member performed a given entry—the Court can only discern that the following types of individuals worked on this case: (1) paralegal(s) at $96.00/hour; (2) attorney(s) at $233.00/hour; and (3) other attorney(s) at $273.00/hour. Itemized Hours Log. Chapman avers that her firm typically charges the following rates for ERISA and LMRA cases: "$70.00 to $93.00 per hour for paralegals, $165.00 to $205.00 per hour for associates and from $210.00 to $320.00 per hour for partners based on their level of experience." Chapman Aff. ¶ 4. She also avers that these rates "are less than or equal to the usual and customary rates charged by other law firms doing similar work in the United States District Court for the Central District of Illinois." *Id.* ¶ 5. No other evidence is provided, such as evidence of a client agreement or an affidavit from another attorney, to establish the market rate. *See Montanez*, 755 F.3d at 553. Moreover, no evidence is provided as to the level of experience or qualifications of Chapman or the unidentified attorneys that would justify the varying rates. Because Chapman's affidavit by itself is inadequate, the Court must independently determine an appropriate rate. *See id.*; *Harper*, 223 F.3d at 604.

Despite the lack of evidentiary support, the Court finds that Plaintiffs' requested rates are largely reasonable. Plaintiffs request a rate of $96.00/hour for their paralegals' time, which is line with what has recently been awarded in the Central District of Illinois. *See Doe v. Macleod*, No. 18-cv-03191, 2024 WL 1335041, at *8 (C.D. Ill. Mar. 28, 2024) (awarding paralegals a rate of $100.00/hour), *appeal filed*, No. 24-1696 (7th Cir. Apr. 25, 2024); *Andrew F. v. Kijakazi*, No. 4:19-cv-04194-SLD-JEH, 2021 WL 5311328, at *4 (C.D. Ill. Nov. 15, 2021) (same). As to the

attorneys' rates, for litigants seeking default judgments under ERISA, courts within the Central District of Illinois have previously found reasonable rates between $195.00 and $210.00. *Operating Eng'rs Loc. 649 Annuity Tr. Fund v. Neidig Excavating, Inc.*, No. 1:18-cv-1330, 2019 WL 13292944, at *3 (C.D. Ill. Jan. 4, 2019) (awarding $210.00/hour on motion for default judgment); *Ill. State Painters Welfare Fund v. Peterson Parking Lot Striping, Inc.*, No. 4:19-cv-04171-SLD-JEH, 2021 WL 4189602, at *5 (C.D. Ill. Sept. 14, 2021) (awarding $195.00/hour on motion for default judgment). As the work in this case was performed in 2024 and 2025—approximately five years later than the cases cited above—the Court finds that Plaintiffs' requested rate of $233.00 is reasonable. However, Plaintiffs provide no information about the relative experience of any of the attorneys who worked on this matter. *Cf. Trs. of N.E.C.A./Loc. 145 I.B.E.W. Pension Plan v. Mausser*, No. 4:18-cv-04045-SLD-JEH, 2024 WL 787068, at *5 (C.D. Ill. Feb. 26, 2024) (awarding a higher rate to the more senior attorney in a contested ERISA matter where the plaintiffs provided affidavits attesting to the attorneys' years of experience), *aff'd*, No. 24-1472, 2024 WL 4647936 (7th Cir. Nov. 1, 2024). Therefore, the Court does not find that the requested rate of $273.00/hour is reasonable and instead compensates those entries at the rate of $233.00/hour. Accordingly, the Court awards $1,782.00 in attorneys' fees instead of Plaintiffs' requested amount of $1,872.00.

      Finally, Plaintiffs seek $454.70 in costs—$405 for the filing fee and $49.70 for process serving costs. Itemized Hours Log. Successful ERISA plaintiffs are entitled to recover their court costs. 29 U.S.C. § 1332(g)(2)(D). The docket reflects that Plaintiffs paid $405 as a filing fee and their affidavit of service included a receipt from the process server, reflecting $49.70 as the cost of service. *See* Aff. Service. Because Plaintiffs have adequately supported their requested costs, the Court awards Plaintiffs $454.70 in costs.

In sum, Plaintiffs are entitled to a total award of $22,633.27—$20,180.18 in liquidated damages; $216.39 in lost earnings; $1,782.00 in attorneys' fees; and $454.70 in costs.

## CONCLUSION

Accordingly, Plaintiffs' Plumbers and Pipefitters Local Union No. 25 Welfare Fund, Plumbers and Pipefitters Local Union No. 25 Pension Fund, Plumbers and Pipefitters Local Union No. 25 Joint Apprenticeship Fund, Plumbers and Pipefitters Local Union No. 25 401(k) Plan, Eastern IA/Western IL Industry Advancement Fund, Labor Management Cooperative Committee Trust Fund, and Plumbers and Pipefitters Local Union No. 25 Motion for Entry of Default Judgment, ECF No. 11, is GRANTED IN PART. Defendant Hirst Plumbing & Mechanical Services, Inc. is liable as a matter of law as to both claims of the Complaint and Plaintiffs are awarded $22,633.27. The Clerk is directed to enter judgment and close the case.

Entered this 25th day of April, 2025.

                                                              s/ Sara Darrow
                                                        SARA DARROW
                                  CHIEF UNITED STATES DISTRICT JUDGE